HUGH BRONSON, Appellee, v. JOHN J. LYNCH et al.,
Appellants.

**VENDOR AND PURCHASER:** Rescission—Fraud—Laches—Effect.
1 Delay, properly explained, of a year in discovering a fraud,
will not deprive an injured party of the right to rescission, or,
if rescission is impracticable, to alternative relief in the form
of damages.

**EQUITY:** Decree—Alternative Relief—Vendor and Purchaser—
2 Fraud. The instigator of a fraud-induced contract of exchange
of lands who has industriously so shaped conditions as to ren-
der rescission impracticable, may not object to the allowance of
alternative relief in the form of damages to the injured party.

*Appeal from Kossuth District Court.*—D. F. COYLE, Judge.

SATURDAY, NOVEMBER 17, 1917.

ACTION in equity for rescission and for alternative re-
lief. There was a decree for plaintiff, and defendants ap-
peal.—*Affirmed.*

*Harrington & Dickinson* and *Maurice O'Connor,* for ap-
pellants.

*Sullivan & McMahon* and *E. A. Morling,* for appellee.

PRESTON, J.—On October 1, 1913, the parties entered
into a written contract, whereby plaintiff agreed to sell to
defendants a fractional 200 acres of land in Kossuth Coun-
ty, Iowa, for $28,200, $4,000 of which was to be paid by
the conveyance by defendants to plaintiff of a quarter sec-
tion of land in Michigan. Plaintiff alleges that defendants
made certain false representations in regard to the Michigan
land, which were relied upon by him and induced the sale;
the lands were conveyed pursuant to the contract; defend-
ants took possession of the land sold them by plaintiff on the

date of the contract, and have ever since been in posses-
sion; plaintiff discovered the falsity of the statements in
September, 1914, and elected to rescind; since obtaining
title, defendants have mortgaged the Kossuth County land
for $3,000; by reason of defendant's fraud, plaintiff was in-
duced to accept the Michigan land as payment of $4,000
of the purchase money; that the Michigan land is worth-
less, and therefore plaintiff has not received payment for
the land sold by him, to the extent of $4,000. An account-
ing is asked, and cancellation of the contract, reconveyance
to the plaintiff, and, by way of alternative relief, in the
event the court is not able to cancel the entire contract, that
the conveyance of the Michigan land be cancelled, and
plaintiff have decree for $4,000 and interest.

Defendants deny the fraud, and say that plaintiff
agreed to accept the Michigan land at an agreed valua-
tion of $4,000, and as an inducement to defendants to pur-
chase the Kossuth County land at the agreed price of $150
per acre, which was more than it was then worth, and
say that, by mistake, the parties failed to express such
agreement in the written contract, and ask a reformation;
allege that there was a shortage in the Kossuth County
land, and that plaintiff is indebted to defendants there-
for; that defendants paid interest on a mortgage which
plaintiff was to pay, and represented he had paid. De-
fendants ask that the contract be reformed to show that the
Michigan land was taken as part payment, and in respect
to the agreement to pay interest and for shortage. The
answer further alleged that defendants took possession of
the Kossuth County land and made improvements, made
payments upon the mortgage and the taxes, and that, by
reason of the improvements, the land has been enhanced in
value, and, further:

"If this court should decree said land should be re-
conveyed to the plaintiff, these defendants are entitled to

be made whole by the payment of all sums which they have paid upon said premises for all purposes, and for the full amount which they have enhanced the value of said premises."

Defendants further claimed that plaintiff made no claim to rescind the contract during the time defendants were making improvements, and that thereby plaintiff is estopped from claiming the right to rescind and to receive back the land. The evidence shows that plaintiff did not discover the fraud for nearly a year, and that defendants were making some of the improvements during this time, and others while this action was pending. Plaintiff admits in his reply that the purchase price agreed upon for his land was $150 per acre, and that there was a shortage in the acreage.

The trial court found that the defendants were guilty of the fraud alleged, and that plaintiff was entitled to the relief demanded, but that rescission was impracticable, because defendants had made improvements, the value and extent of which were uncertain and impossible of satisfactory ascertainment, and, further, that it was impracticable to ascertain the rental value of the land with which defendants ought to be charged; that, after the beginning of the action, defendants remained in possession, planted crops, which, at the time of the decree (in July, 1915), were growing, and the value whereof was not capable of ascertainment; that it would be impracticable at that season to remove defendants from the premises, or for plaintiff to go upon the land or find tenants; that it was inadvisable to create a relationship of landlord and tenant between the parties, or give the defendants the right to occupy the premises as tenants; that the decree ought to terminate all relations between the parties growing out of the transaction, and, because of the impracticability of rescission, rescission ought to be denied, and compensation awarded to plaintiff. The court found and decreed that the actual value

of the Michigan land was $160, and the compensation to which plaintiff was entitled was $3,840 and interest; that defendants were entitled to an abatement of the purchase price of the Kossuth County land for the deficiency, amounting to $432, and interest, leaving the amount plaintiff was entitled to recover, $3,782.32, with interest. The decree further provided that the defendants should have the option to pay the plaintiff the value of the Michigan land, $160, and the amount of taxes paid by plaintiff, and that, on paying said sums within six months, defendants should be entitled to a reconveyance of the Michigan land.

The principal fact question is as to the representations, and the record is a large one. Appellant concedes that there is a serious conflict in the evidence respecting the more important questions of fact. Five witnesses testified for plaintiff: the plaintiff himself and three sons, and another witness, apparently disinterested, except that defendants say he was unfriendly to one of the defendants. The evidence for defendants consists of that of the three defendants themselves. Counsel for defendants say that their witnesses should be believed; that plaintiff has trained himself and his boys into the execution of a maze of untruths. On the other hand, counsel for plaintiff urge that their witnesses should be believed, and that defendants were clearly guilty of fraud, and that one of them as a witness practically admitted all of plaintiff's claims. Our experience is that counsel on either side occasionally take a similar view of the evidence of their adversary's witnesses.

We shall not go into the evidence. It is enough to say that, after a careful reading of it, we are satisfied with the conclusions of the trial court, not only as to the false representations, but as to the value of the land, and the other issues; that plaintiff's land was at that time worth $150 per acre, and that the Michigan land was worth not to exceed the amount found by the trial court. The evidence as to

the value of plaintiff's land ranges from $125 an acre, given by defendants' witnesses, to $175, by plaintiff's. Plaintiff has a larger number of witnesses on value, and they appear to be of equal credibility with those testifying for defendants. There seems to be no serious claim that the Michigan land was worth more than the amount found by the trial court.

1. It is contended by appellants that, because of the plaintiff's delay in investigating the Michigan land for nearly a year, with knowledge that defendants were expending money in improving the land, plaintiff was guilty of such laches as to defeat his right to recover. But the Michigan land was in a distant state, and there are other circumstances in the record showing that plaintiff did not discover the fraud until shortly before the action was brought, and that he was excusable for the delay. Under the record, defendants could not have been misled by any conduct of plaintiff into believing that plaintiff had become aware of the fraud and had affirmed the transaction. Under the authorities, we think the action is not barred by laches. See *O'Connor v. O'Connor,* 100 Iowa 476; *McIntire v. Pryor,* 173 U. S. 38, 53; *Keller v. Harrison,* 151 Iowa 320; *Campbell v. Spears,* 120 Iowa 670; *Rohr v. Shaffer,* 178 Iowa 943; 9 C. J. 1205.

1. VENDOR AND PURCHASER: rescission: fraud: laches: effect.

2. It is thought by appellants that the contract was not severable, and if the whole could not be rescinded, no part can be rescinded; that plaintiff's only remedy was an allowance of damages—citing *Owens Co. v. Doughty,* (N. D.) 110 N. W. 78, 80; *Higham v. Harris,* (Ind.) 8 N. E. 255, 259; *Grymes v. Sanders,* 23 L. Ed. 798, 802; *Bell v. Keepers,* (Kan.) 17 Pac. 785, 786; *Neal v. Reynolds,* (Kan.) 16 Pac. 785; *Morrow v. Moore,* (Me.) 99 Am. St.

2. EQUITY: decree: alternative relief: vendor and purchaser: fraud.

Rep. 410, 413; *Fay v. Oliver*, (Vt.) 49 Am. Dec. 764.

But, under the record, plaintiff would have been entitled to a complete rescission for defendants' fraud, had it been practicable. The defendants went into possession of plaintiff's land at the time the contract was made, and made considerable improvement. The suit was brought in the fall of 1914. Defendants remained in possession and made the improvements during the pendency of the suit.. They were not only guilty of fraud, but persisted in their efforts to make rescission impracticable,—at least such was the effect of their conduct. The defendants could not well be removed from the premises in the middle of the summer, with growing crops. It should have been said that, at the time of the trial, a consent drain, 1,600 feet of the main and 600 feet of the lateral, on the farm, was still being constructed, and it had not been figured up or paid for. The fair rental value of the land under such circumstances could not well be fixed; it would not be just to the plaintiff, under the circumstances, to permit defendants to remain in possession as tenants. The defendants asked for reformation of the contract, and asked damages in the abatement of the purchase price, and obtained it. Under the evidence, defendants did not want a total rescission. As before stated, defendants in their answer pleaded that, by reason of the improvements and the increase in the value of the land, plaintiff was not entitled to rescind as to the Kossuth County land, and that plaintiff had waived the right to object to receiving and retaining the land in Michigan. Under all the circumstances, it seems to us that defendants are in no position to say that the court should not allow the plaintiff the damages which he has sustained. Under such circumstances, the court did complete justice between the parties by awarding compensation for the Michigan land. See *Howard v. National F. D. H. Assn.*, 169 Iowa 719; *Fish-*

*er v. Trumbauer & Smith,* 160 Iowa 255, 260; *Thurber v. Duckworth,* 165 Iowa 685, 695; *Johnson v. Carter,* 143 Iowa 95, 100; *Duesenburg v. Goldsworthy,* 165 Iowa 407; *Schmidt v. Johnstone,* (N. D.) 153 N. W. 293; 6 Cyc. 286–342.

We think this is especially true where, as here, each party is submitting to the court all his claims in reference to the transaction, and, as said, defendants were asking relief by way of damages, and they procured such relief in the abatement of the purchase price for deficiency in acreage, and other items. See, on this point, *Reiger v. Turley,* 151 Iowa 491.

Appellants further say that, conceding that plaintiff's pleadings are sufficient to authorize the relief granted, still the evidence shows that, even under this rule, plaintiff has sustained no damages, because the cash paid, added to the actual value of the Michigan land, equals or exceeds the actual value of the Kossuth County land. But, as before indicated, we think otherwise.

3. There was no error in the ruling of the court refusing to strike plaintiff's amendment to the petition. Under the record, we think plaintiff was not estopped from claiming the right to rescind or to recover damages.

The points discussed are decisive of the case, and we think the decree of the trial court does justice to both parties, and that the decree ought to be affirmed. It is—*Affirmed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.