Harold W. EVERSON, Plaintiff and Appellee,

v.

NORTHLAND LIFE INSURANCE COMPANY, Grand Forks, North Dakota, Defendant and Appellant.

Civ. No. 10202.

Supreme Court of North Dakota.

Jan. 27, 1983.

Teevens, Johnson, Montgomery and Robert W. Palda, Minot, for plaintiff and appellee; argued by Bruce R. Montgomery, Minot.

Mack, Moosbrugger, Ohlsen & Dvorak, Grand Forks, for defendant and appellant; argued by John H. Moosbrugger, Grand Forks.

SAND, Justice.

Northland Life Insurance Co., the defendant (Northland), appealed from "the denial of the Motion for a trial anew entered, against the defendant . . . on the 1st day of April, 1982."

Harold W. Everson, plaintiff-appellee (Everson), brought an action against Northland alleging that pursuant to the terms of a "General Agent's Contract" and an "Agent's Supplement" contract executed by Everson and Northland on 1 September 1971, Northland still owed him commissions and benefits (including termination benefits). Northland answered generally denying every allegation of Everson's complaint and counterclaimed alleging that Everson was indebted to Northland for sums of money advanced to him. Everson replied to the counterclaim denying in part, or claiming insufficient knowledge to admit or deny, the allegations in the counterclaim.

After several pretrial proceedings, a trial to the court was held. The court entered a decision in which it concluded that Everson was entitled to termination benefits on the written "General Agent's" contract in the sum of $2,475.00, and termination benefits from an oral "Agency Director" contract in the amount of $18,943.80, and that Northland was entitled to an offset in the sum of $5,723.66, based on its counterclaim. Accordingly, findings of fact, conclusions of law, and order for judgment were issued, and judgment in favor of Everson in the total sum of $15,605.14 was entered.

Northland moved for a new trial under the provisions of Rule 59(b)(1), (6), and (7), North Dakota Rules of Civil Procedure, which provides as follows:

"(b) Causes for New Trial. The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

1. Irregularity in the proceedings of the court, jury, or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial;

.  .  .  .  .

6. Insufficiency of the evidence to justify the verdict or other decision, or that it is against law;

7. Errors in law occurring at the trial and, when required, excepted to by the party making the application."

Northland submitted a memorandum of law in support of its motion for a new trial which, in part, stated "there was no evidence of any kind produced at trial either on behalf of plaintiff [Everson] or defendant [Northland] indicating that there was any termination benefit involved in the oral agency director's contract which the Court found to exist." Northland also argued in its memorandum of law that a new trial should be held on the issue of "whether or not . . . the termination benefits of Section 5 of the general agents contract would also apply to the oral contract as agency director." Northland then continued by stating, "It is submitted, however, that this testimony has already been taken and that both the plaintiff [Everson] and defendant [Northland] have agreed that there were no such benefits discussed or offered to the

plaintiff [Everson] and that therefore, the Court should amend the Findings of Fact and Conclusions of Law and Order for Judgment giving the defendant [Northland] a total judgment of $3,248.66."

After oral argument on Northland's motion for a new trial, the court made the following comments from the bench: [1]

"Counsel will recall in conclusion of the September 23rd proceedings where I said: 'When the case was over it appeared to me that Mr. Everson had performed far below expectations. He had not done a good job. It was necessary for Mr. Schmidt to deal with the problem of having contracted with somebody who did not perform as he should have and whom he had given a position over the other agents and the Court had to find within the terms of the contract what their agreements were and in doing so I realized that Mr. Schmidt was having to pay to rid himself of an agency director who had not properly performed and he was bound by the terms of his agreement, and in doing so the Court was aware that there was going to be unearned payment and in the sense Mr. Palda is right in that it is not simply a matter of settling an account but it is a matter of trying to deal with the termination and contract rights that were conferred upon Mr. Everson by the company through Mr. Schmidt as president in hiring him and faced with the difficult task of firing him.'

"I think it may not have been actually stated in the prior proceedings, but one of the considerations I had and would have in the matter today in construing the contracts would be that it would be difficult to believe that it was the intention of Mr. Schmidt at the time that he elevated Mr. Everson to agency director, that he was doing so for the purpose of cutting him out of any termination rights as a general agent. And that is what in effect we're being asked here today, or that Mr. Everson would have taken the general agency if he thought by doing so he would be stripped of termination benefits that he already enjoyed as a general agent. It would be tantamount to being elevated out of office or out of a position, at least with relative [sic] to termination rights.

"Neither of the parties are present today but I think it should be clear from the proceedings and in the Court's statements before that it is not my understanding that Mr. Everson actually deserves in the sense of having earned those termination benefits, but it appeared to the Court, after considerable argument and reargument, that there was a merger of all of those considered provisions and no clear-cut removal of any termination rights from Mr. Everson by any of the acts by Mr. Schmidt in elevating Mr. Everson to agency director, and that all of the contract's terms would have to be harmonized to whatever extent possible and that's the conclusion that I came to. And while I am sympathetic with the defendant in not wanting to pay Mr. Everson money that he didn't in any real way earn, it seemed to me that I was driven to that conclusion by the evidence in the case and that was the way that the Court held."

The court orally denied Northland's motion for a new trial on 5 April 1982 and a written order denying Northland's motion was entered on 26 April 1982.

Northland filed a notice of appeal with the district court on 15 April 1982 which provided that Northland "hereby appeals to the North Dakota Supreme Court from the denial of the Motion for a trial anew entered, against the defendant . . . on the 1st day of April, 1982."

We must initially consider whether or not an appeal is authorized from "the denial of the Motion for a trial anew entered . . . on the 1st day of April, 1982."

1. A written memorandum of decision stating the grounds on which the ruling was based was not filed. See, NDRCivP 59(f).

The right of appeal in this state is statutory and is a jurisdictional matter which we may consider sua sponte. *E.g., Johnson v. King,* 325 N.W.2d 254 (N.D. 1982). This Court may dismiss an appeal on its own motion, if the appeal is not authorized pursuant to statute. *E.g., In Interest of R.A.S.,* 321 N.W.2d 468 (N.D.1982).

North Dakota Century Code § 28–27–02(4) provides as follows:

"The following orders when made by the court may be carried to the supreme court:

. . . . .

4. An order which grants or refuses a new trial or which sustains a demurrer."

In this instance the notice of appeal was filed on 15 April 1982 before the order denying Northland's motion for a new trial was entered on 26 April 1982. Northland's attempted appeal is apparently from the trial court's oral denial of its motion for a new trial; however, the date referenced in the notice of appeal and the date of the trial court's oral denial of Northland's motion do not coincide. The provisions in Rule 37(b), NDRCrimP,[2] do not apply to civil cases. Be that as it may, we are still confronted with an appeal from "the denial of the Motion for a trial anew." The order denying Northland's motion for a new trial, from which an appeal may properly be taken, was filed subsequent to the notice of appeal. We do not believe our rules of procedure and statutes confirming the right to appeal contemplate or sanction a cursory treatment of the important process of perfecting an appeal. Consequently, we conclude that Northland's appeal is not properly before this court, and we dismiss the appeal.

Although we dismiss the appeal, we will comment briefly on the issues raised on the merits by Northland with the caveat that our comments shall not be considered a precedent. See, *In Interest of R.A.S., supra.*

The issues raised by Northland were based on the premise that the appeal was from the order denying its motion for a new trial and were not based on an appeal from the judgment. Consequently, our comments will be directed to Northland's issues in the procedural posture of an order denying its motion for a new trial.

Northland argued before the trial court, and on appeal to this Court, that the judgment should be amended, modified, and reduced, or in the alternative that a new trial should be granted on the question of whether or not the oral "Agency Director" contract included termination benefits.[3] In particular, Northland contended that finding of fact number 5, which provides as follows, was not supported by evidence:

"The Court further finds that there was an oral contract as agency director between Northland Life Insurance Company and plaintiff, Harold W. Everson and that pursuant to said oral contract Mr. Everson is entitled to termination benefits of $18,943.80."

When a party appeals from an order denying a new trial, the review in this Court is limited to the grounds asserted for a new trial which were presented to the lower court. *Davis v. Davis,* 268 N.W.2d 769 (N.D.1978). In this instance the sufficiency of the evidence to support the particular finding of fact was raised by Northland in its motion for a new trial.

A motion for a new trial based upon insufficiency of the evidence is addressed to the trial court's sound discretion and will not be disturbed on appeal in the absence of an abuse of discretion. *Scientific Application, Inc. v. Delkamp,* 303 N.W.2d 71 (N.D.

---

2. NDRCrimP 37(b) provides, in part, that:

"A notice of appeal filed after the announcement of the verdict, decision, sentence, or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof."

3. One of the issues raised by Northland was whether or not there was an oral "Agency Director" contract. There is an abundance of evidence in the record to support the finding of fact of an oral agency director contract and under any standard of review such a finding was not erroneous.

1981); *Wall v. Pennsylvania Life Ins. Co.*, 274 N.W.2d 208 (N.D.1979).

Based on the previously set out statement by the trial court and the record before us, we do not believe that the trial court acted unreasonably, arbitrarily, or unconscionably in denying Northland's motion for a new trial.

The appeal is dismissed.

ERICKSTAD, C.J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.

